UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:19-CR-00205

UNITED STATES OF AMERICA                                                            PLAINTIFF

V.              **UNITED STATES' SENTENCING MEMORANDUM**

CORRELL BUCKHALTER                                                                  DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*

The United States of America, through counsel, hereby submits its position with respect to the appropriate sentence for Defendant Correll Buckhalter. The United States concurs with the United States Sentencing Guidelines ("U.S.S.G.") calculations set forth in the Buckhalter's Presentence Investigation Report ("PSR"), and there are no unresolved objections from the Defendant to the PSR. As such, the United States focuses its discussion below on the appropriate sentence for Buckhalter pursuant to the factors set forth in 18 U.S.C. § 3553(a).

## BACKGROUND

On December 5, 2019, the grand jury returned a five-count Indictment, charging Buckhalter and Carlos Rogers with conspiracy to commit health care fraud and wire fraud, in violation of 18 U.S.C. § 1349. The Indictment also charged Rogers with individual counts of wire fraud, in violation of 18 U.S.C. § 1343, and health care fraud, in violation

1

of 18 U.S.C. § 1347.  [R. 1: Indictment.]   On June 11, 2020, Buckhalter pleaded guilty to the single Count against him (conspiracy to commit health care fraud).  [R. 56: Plea Agreement.]   Buckhalter is scheduled to appear before the Court for sentencing on October 25, 2021.

## ANALYSIS

Courts "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. King*, 553 Fed. Appx. 518, 520 (6th Cir. 2014) (citing *Gall v. United States*, 552 U.S. 38, 49 (2007)).  The Guidelines range is advisory and serves as the "starting point and initial benchmark" for the Court's sentencing analysis. *United States v. Bolds*, 511 F.3d 568, 579-80 (6th Cir. 2007) (citation omitted). Next, the Court must consider the factors set forth in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; the need to afford adequate deterrence; the need the need to avoid unwarranted sentencing disparities; and the need to provide restitution to any victims of the offense.  *See* 18 U.S.C. § 3553(a)(1)-(7).

**I.**     **The PSR Accurately Calculates the Applicable Guidelines Ranges.**

The parties have no unresolved objections to Buckhalter's final PSR and agree with the USSG calculations set forth in it.  For the Court's reference, those calculations are as follows: (a) a base offense level of 6; (b) a 14-level enhancement for losses of more than

$550,000 but less than $1,500,000; (c) a four-level adjustment for role in the offense, and (d) a three-level adjustment for acceptance of responsibility. [PSR ¶¶ 34-42.] Buckhalter's criminal history category is I. [*Id.* ¶ 47.] Buckhalter's resulting advisory guideline range is **37-46 months**. [*Id.* ¶ 67.]

## II. The Sentencing Factors Set Forth in Section 3553(a) Support a Sentence at the Low End of The Guidelines for Each Defendant.

The sentencing factors set forth in 18 U.S.C. § 3553(a) support a sentence at the low end of the U.S.S.G. range for Buckhalter. As the United States discusses in greater detail below, Buckhalter was a successful professional athlete who used a generous health benefit plan as a piggy bank. This offense is serious and presents a need for significant deterrence. The United States is mindful, however, that Buckhalter timely accepted responsibility for his role in the conspiracy and that he has the capacity to contribute meaningfully to society without engaging in additional criminal conduct. Thus, the United States respectfully submits that a sentence for Buckhalter at the low end of the Guidelines appropriately addresses the factors set forth in Section 3553(a).

### A. Nature and Circumstances of the Offense

Buckhalter is a former player in the National Football League ("NFL") who qualified as a Participant in the Gene Upshaw NFL Player Health Reimbursement Account Plan ("the Plan"), a health care benefit program established pursuant to the 2006 Collective Bargaining Agreement between the NFL Management Council and NFL Players Association. The Plan was established to assist certain former NFL players and their

3

families pay for health care costs after the player's retirement. The Plan reimburses its Participants, their spouses and dependents for out-of-pocket medical care expenses up to a maximum of $350,000. The Plan is funded solely through contributions by the NFL teams, not the players, and any benefits remaining at the time of a former player's death would pass to his spouse and other dependents.

Participants were not taxed when benefits became available to them under the Plan, nor were they taxed on reimbursements, so long as the reimbursements were for actual Medical Care Expenses incurred by the Participants or their families. If the Plan allowed reimbursements to Participants for expenses other than Medical Care Expenses, for example, cash payments not associated with any Medical Care Expenses, the Plan could lose its tax-favored treatment, and Participants in the Plan could be subject to taxation on their reimbursements.

Rather than using the Plan as intended – to pay for legitimate, out-of-pocket medical expenses incurred in retirement – Buckhalter joined a conspiracy devised by Defendant Robert McCune to extract money from the Plan using bogus claims for nonexistent medical equipment. [PSR ¶ 28.] As part of that conspiracy, Buckhalter agreed to provide his personal information to McCune so that McCune could submit false and fraudulent claims to the Plan on behalf of Buckhalter. In exchange, Buckhalter agreed to pay McCune a kickback of approximately $3,500 for each of the false and fraudulent claims that McCune submitted to the Plan on Buckhalter's behalf. In response to these false and fraudulent

4

claims, the Plan paid Buckhalter $121,493.88 for medical equipment that Buckhalter never actually purchased or received.  [PSR ¶¶ 27-28.]

In addition, Buckhalter was a leader and organizer of a separate, similar conspiracy whereby he and others recruited Participants into that separate scheme by offering to submit or cause the submission of false and fraudulent claims to the Plan in exchange for the payment of kickbacks and bribes.  [PSR ¶¶ 17-26.]  As part of that separate scheme, Buckhalter also submitted a false and fraudulent claim to the Plan on his own behalf.  The Plan paid Buckhalter $56,821 for this false and fraudulent claim.  [PSR ¶¶ 27-28.]  In total, Buckhalter and his coconspirators submitted or caused the submission of $1,291,560 in false and fraudulent claims to the Plan, and the Plan paid $749,050 in reimbursements for items that were not medically necessary and not actually provided.  [PSR ¶ 28.]

In sum, Buckhalter was, at least in part, a leader and organizer of a significant fraud perpetrated against a health care plan that was established specifically to help fellow retired NFL players and their families pay for out-of-pocket health care costs.  Indeed, Buckhalter's actions—profiting from the submission of false and fraudulent claims unrelated to any health care expenses—threatened the Plan's tax-favored status and could have resulted in significant tax bills for all other participants and their families who were using the Plan correctly.

Health care fraud of this nature contributes greatly to the inflated cost of health care in this country.  It is incumbent upon the Court to send a strong, clear message to the

public that such a violation of the trust health care plans place in those they seek to help cannot and will not be tolerated.

    **B.**    **History and Characteristics of the Defendants**

A review of Buckhalter's history and characteristics suggests that he enjoyed success in athletics, had access to quality educational opportunities, and otherwise lacked a compelling explanation to turn to health care fraud as an illicit source of income.

Buckhalter is 43 years old. He was raised primarily by his father and step-mother and had a "good" childhood. [PSR ¶ 53.] In addition, Buckhalter reports that he spent a lot of time with his maternal aunts and grandparents, who all resided in the same neighborhood. [*Id.*] Buckhalter was a standout football player at the University of Nebraska and later played in the NFL for several seasons. [*Id.* ¶¶ 60-62.]

Buckhalter was diagnosed with Depression, Anxiety, Insomnia, and Chronic Traumatic Encephalopathy (CTE) in 2015. Buckhalter currently receives treatment on a quarterly basis for his mental health issues from a psychiatrist in his hometown. Instead of medication, Buckhalter uses natural approaches such as pilates and yoga for his mental health well-being. [PSR ¶ 56.]

Buckhalter does not have any significant history of substance abuse. [PSR ¶¶ 58-59.]

### C.     Need to Deter Future Criminal Conduct

Section 3553(a)(2)(C) considers both specific deterrence as to the defendant and general deterrence as to the public. The United States assumes that Buckhalter will not further defraud the Plan in the future. But a within-Guidelines sentence is important to send a message to all other potential health care fraudsters.

"Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (citations omitted). Accordingly, general deterrence is a "crucial factor in sentencing decisions for economic . . . crimes." *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015); *see also* S. REP. 98-225, at 76 (legislative history of § 3553 notes that deterrence is "particularly important in the area of white collar crime").

This is especially true in health care fraud cases like the present. Health care fraud plagues this country and increases the cost of health care for everyone. The health care system in this country relies upon honesty. A within-Guidelines sentence will help ensure that others know that fraud will result in more than a repayment order or fine, but rather will result in a meaningful prison term.

### D.     Need to Protect Public from the Defendants' Future Criminal Conduct

The United States believes that within-Guidelines sentences will adequately protect the public from any future criminal behavior, if any.

### E.     Need to Provide Treatment to Defendant

Buckhalter does not appear to suffer from any substance abuse or mental health disorders that require further treatment than that which he currently receives. As such, this factor does not bear on the appropriate sentence under § 3553(a).

### F.     Need to Avoid Unwarranted Disparities

The Defendants' crimes do not fall outside the heartland of criminal offenses, and a sentence within the Guidelines range will ensure that no unwarranted disparity exists between their sentences and the sentences of similarly situated defendants. To date, five defendants have been sentenced by this Court for participating in the related criminal schemes to defraud the Plan: (1) the Court sentenced John Eubanks to 18 months' imprisonment, after he pleaded guilty to receiving $22,282 for helping facilitate the submission of 10 false claims on behalf of other players; (2) the Court sentenced Ceandris Brown to a year and a day, after he pleaded guilty to causing the submission of two false and fraudulent claims to the Plan on his behalf (both of which were paid); (3) the Court sentenced Etric Pruitt to three months' imprisonment followed by 180 days' home confinement, after he pleaded guilty to causing the submission of two false and fraudulent claims to the Plan on his behalf (both of which were paid); (4) the Court sentenced James Butler to two months' imprisonment followed by 180 days' home confinement, after he pleaded guilty to causing the submission of three false and fraudulent claims to the Plan on his behalf (all of which were paid); and (5) the Court sentenced Carlos Rogers to time

served and 180 days of home detention, after he pleaded guilty to receiving $6,500 for helping facilitate the submission of four false claims on behalf of other players.  *See* R. 88: Judgment Upon Plea of Guilty as to Carlos Rogers; *United States v. McCune et al.*, No. 5:19-cr-00206-KKC (R. 131, 505, 506, 511).

Buckhalter's offense conduct is more egregious than that of the Defendants who have already been sentenced.  Whereas those Defendants either had claims submitted on their own behalf or recruited others into the schemes, Buckhalter did both and was a leader and organizer of one of the schemes.  However, Buckhalter did accept responsibility to a greater degree than those Defendants.  In addition, Buckhalter pleaded guilty early. Therefore, a sentence at the low end of the Guidelines is appropriate.

## CONCLUSION

For the reasons stated above, the United States submits that a sentence at the low end of the Guidelines appropriately addresses the factors set forth in Section 3553(a).

Respectfully submitted,

CARLTON S. SHIER, IV
ACTING UNITED STATES ATTORNEY

/s/ Andrew E. Smith
Andrew E. Smith
Assistant United States Attorney
260 W. Vine St., Suite 300
Lexington, KY 40507
Tel: (859) 685-4849
Andrew.e.smith@usdoj.gov

JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

/s/ John ("Fritz") Scanlon
John ("Fritz") Scanlon
Alexander J. Kramer
Trial Attorneys
U.S. Department of Justice, Criminal Division
1400 New York Avenue NW
Washington, DC 20530
Tel: (202) 304-2946 (Fritz Scanlon)
Tel: (202) 768-1919 (Alexander Kramer)
john.scanlon@usdoj.gov
alexander.kramer@usdoj.gov

## CERTIFICATE OF SERVICE

On October 18, 2021, I electronically filed this motion through the ECF system, which will send the notice of electronic filing to all counsel of record.

/s/ Andrew E. Smith
Assistant United States Attorney
